On Application for Rehearing
This court's original opinion, which was released on October 18, 1996, is withdrawn and the following is substituted therefor:
This is a child custody case.
The parties were divorced in August 1990. The father obtained the divorce upon the default of the mother. The trial court awarded custody of the parties' two minor children to the father.
In July 1991 the mother filed a petition for a modification of custody. The court issued an order, wherein it adopted the terms of an agreement reached by the parties, and again awarded custody of the minor children to the father, with visitation rights vested in the mother. The trial court further ordered the mother to pay $295 per month as child support.
In November 1995 the mother filed another petition for a modification of custody, along with a petition for contempt. The father filed an answer and a counterclaim, wherein he alleged contempt for the mother's failure to pay child support.
On March 11, 1996, after an ore tenus hearing based on the testimony of at least 15 witnesses, video depositions, documentary exhibits, and the extensive report and recommendations of the guardian ad litem, the court awarded the custody of the two minor children to the mother, with visitation rights vested in the father. The court further ordered the father to pay $400 per month as child support, commencing 18 months after the date of the order to offset the arrearage owed by the mother. The father filed a post-judgment motion, which was denied.
The father appeals and contends that the trial court's order of March 11, 1996, is so unsupported by the evidence as to be plainly and palpably wrong and that the trial court committed reversible error when it failed to evaluate the evidence in accordance with Ex parte McLendon, 455 So.2d 863 (Ala. 1984). The father also contends that the trial court erred in not finding the mother in contempt.
Initially, we note that Ex parte McLendon requires that the party seeking modification of custody demonstrate that a material change in circumstances has occurred since the most recent order of the trial court and that the change in custody will materially promote the child's welfare and will more than offset the disruptive effect of the change in custody.
We have reviewed the record on appeal. Suffice it to say that there was a significant amount of conflicting, as well as biased, testimony. However, it was the responsibility of the trial judge to listen to the evidence presented ore tenus, to resolve the conflicts in the evidence, and to render a decision. Johnson v. Johnson, 597 So.2d 699
(Ala.Civ.App. 1991). Based on the very detailed and specific findings of fact set out in the learned and distinguished trial judge's order, it is apparent that he did just that. *Page 370 
Therefore, for this court to reverse would require that we substitute our judgment for that of the trial court. This, the law does not permit. Grubbs v. Crosson, 634 So.2d 593
(Ala.Civ.App. 1994).
With the above standard in mind, we do not deem it necessary to set out in detail the full facts of this case. However, we will elaborate on some of the highlights of this appeal. To start, we would note that neither party exemplifies the paragon of a role model parent. In fact, during the course of the hearing, both parties sought to demonstrate the unsuitability of the other. We would also note that the father has consistently tried to undermine the children's relationship with their mother.
The evidence portrays the father as having a very distinct pattern of abusive behavior. The evidence also indicates that the father doles out his parental responsibilities to the women in his life. After the divorce the father entered into a second marriage, which also failed. The second wife testified that the father was a very abusive person and expressed her concern regarding the children's emotional stability. In fact, she stated that she and the father often engaged in physical, as well as verbal, altercations in front of the children and that on one occasion, the older child intervened in one of those physical altercations. She further testified that the father has a prescription drug problem and smokes marijuana routinely.
Martha Norris, an employee at Dozier Elementary School, testified that before the father remarried, the children arrived at school on numerous occasions without any lunch money. Norris further testified that she was unable to reach the father when these and other mishaps occurred. After the father remarried, the school immediately began contacting his new wife when there was a problem with the children. In fact, the wife testified that she was the primary caregiver for the children and that they referred to her as their mother.
The record also reveals that the older child has a disciplinary problem and has been suspended from school on at least two different occasions. The child also received three "F's" and one "D" on one of his report cards. It is also noted that the father has changed residences at least six different times since his divorce from the mother and that the children have been enrolled in at least three different schools. And, the father testified that he plans to move again in the near future.
The father's marriage to his third wife depicts the same pattern of behavior. The third wife testified that she and the father have engaged in three major fights. After their last fight, the wife wrote a letter to the children's mother. In the letter the wife explained that her relationship with the father was not a good one because of the abuse. She explained that the father has a very bad temper and can be really mean. She also expressed her concern about the children living in such an abusive atmosphere. And, it is also noted that, once again, the children refer to the third wife as their mother.
Indeed, it appears from all indications that the children deserve a more stable and calm environment. And, notwithstanding the mother's past indiscretions, she has demonstrated a most extreme turnabout in her role as a parent since the last custody order.
The mother is presently remarried. Her new husband is employed as a patrolman with the Hattiesburg Police Department. He is also a Staff Sergeant with the Mississippi Army National Guard and a part-time employee of his father's lawn care business. His father is the Mayor of Petal, Mississippi, and his mother is a teacher. The husband testified that he, as well as his parents, has a very good relationship with the two minor children. He stated that he and his wife take the children skating, go to the movies, play basketball, go to the mall, ride horses, and work on school projects together. The mother also has one infant child with her new husband.
The mother testified that she has been exercising her visitation rights on a regular basis and has paid some child support to the father. The mother also testified that she has medical insurance on the children through her husband's employment. The mother also has a part-time job. *Page 371 
In essence, the mother is apparently enjoying a more composed life with her new husband and appears to be able to provide her children with a much more stable environment.
Next, the father contends that the trial court abused its discretion in failing to find the mother in contempt for child support arrearage. We note that the standard of review in a civil contempt case was clarified by this court in Stack v.Stack, 646 So.2d 51, 56 (Ala.Civ.App. 1994), as follows:
 "[W]hether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm."
After reviewing the evidence, we cannot find that the trial court abused its discretion. Consequently, that portion of the judgment is affirmed.
The father also contends that the trial court erred in computing the child support arrearage owed by the mother.
Our review of the record reveals the following: The original divorce judgment provided that the mother was to pay $295 per month as child support, beginning December 1991. The trial court conducted an ore tenus hearing in March 1996 on the issue of a modification of custody. The mother was, therefore, responsible for a total of 51 child support payments accruing from December 1991 to February 1996. Fifty-one payments multiplied by $295 per month is $15,045.
In regard to credits, the father testified that he received a total of $2,726.34 in child support payments from the mother during the 51 months that he had custody of the children. However, the father was able to produce only 7 individual receipts for $200 each. The mother did testify that at the time of the trial, she was in excess of $10,000 in arrears. The father contends that the mother is, specifically, $12,318.66 in arrears. The mother does not dispute this figure.
The trial court, in its order dated March 22, 1996, determined that the mother was $7,379 in arrears in her payment of child support through the date of the trial. After modifying the custody agreement, the trial court ordered the father to pay $400 per month as child support, commencing 18 months after the date of the order to offset the arrearage owed by the mother.
It is well-settled law that when a trial court receives ore tenus evidence in a case involving the determination of child support arrearage and the disposition thereof, its judgment is clothed with a presumption of correctness and will not be set aside unless it is plainly and palpably wrong. Rubrigi v.Rubrigi, 630 So.2d 67 (Ala.Civ.App. 1993).
Here, the trial court did not indicate in the order how it determined the amount of arrearage. And, unfortunately, there is no evidence in the record to support its determination. In fact, it appears as if the trial court calculated the arrearage based on $200 per month instead of $295 per month. We reiterate that the divorce judgment required the mother to pay $295 per month. The evidence, however, reveals that the mother made 7 individual payments in the amount of $200 each. If we multiply $200 per month by 51 months and subtract the purported credit of $2,726.34, we arrive at $7,473.66. This figure is very close to the trial court's figure of $7,379. If the trial court did, in fact, calculate the arrearage based on $200 per month instead of $295 per month, we conclude that it erred.
It is well-settled law that "child support payments become final judgments on the date they accrue, and they are thereafter immune from change or modification."Rubrigi, 630 So.2d at 68.
Therefore, in light of the above, we conclude that the trial court erred in finding that the mother was only $7,379 in arrears.
Based on the foregoing, the portion of the judgment relevant to child support is remanded for a proper calculation of child support arrearage and for the entry of a judgment consistent with this opinion.
The mother's request for attorney fees on appeal is, in view of all the circumstances, denied. *Page 372 
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; RULE 39(k) MOTION DENIED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
All the judges concur.